UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br>    v. )<br> )<br>JOHN SULLIVAN, )<br> )<br>            Defendant. ) | Criminal No. 23-10039-DJC |

## UNITED STATES' SENTENCING MEMORANDUM

Defendant John Sullivan threatened to kill a Vietnamese man and his family members, ordered them to "go back to China!" and then hit the man with his car – twice – because the man and his family were Asian. Sullivan committed a hate crime, and his acts caused the victim to suffer bodily injury. For the reasons set forth below, the United States recommends a sentence of 24 months incarceration, followed by a three-year term of supervised release, and restitution as set forth herein.

## BACKGROUND AND OFFENSE CONDUCT

Sullivan pleaded guilty to violating 18 U.S.C. § 249(a)(1) for using a dangerous weapon – his vehicle – to cause bodily injury to G.N., because G.N. and his family were Asian. ECF No. 67. Specifically, on December 2, 2022, G.N. went to the post office in Quincy, Massachusetts with his sister, brother-in-law, and their three children under age 12. Presentence Report ("PSR") ¶ 9. G.N. and his sister are Vietnamese, and G.N.'s brother-in-law is Chinese. PSR ¶ 10. G.N.'s brother-in-law was waiting in the car while the rest of the family members went into the post office when Sullivan pulled his car up behind him. PSR ¶ 10. None of G.N.'s family had met Sullivan before. PSR ¶ 10. Sullivan honked at G.N.'s brother-in-law, gave him the middle finger, yelled an expletive at him, and told him to "go back to China!" PSR ¶ 10. When G.N. and the

1

rest of the family came out of the post office, Sullivan started yelling at them, "Go back to China!" PSR ¶ 11; ECF No. 67.

Sullivan also admitted that he threatened to kill G.N.'s family members. ECF No. 67. He pointed at G.N.'s sister and said, "I'm going to kill you." PSR ¶ 11. Sullivan then pointed in turn to G.N., his brother-in-law, and two of the children and repeated, "I'm going to kill you" separately to each one of them. Sullivan then pointed to the youngest child and said, "but not you." PSR ¶ 11.

Sullivan further admitted that when G.N. was in front of his vehicle, Sullivan started driving and hit G.N., forcing G.N. onto the hood of Sullivan's car. PSR ¶ 12; ECF No. 67. Sullivan drove about 200 feet down the street with G.N. on the hood of his car, keeping pace with traffic. PSR ¶ 13. G.N. was holding on to the hood and windshield wipers while screaming for help. Sullivan then slammed on his breaks, stopping abruptly, and G.N. fell off the hood. PSR ¶ 13. G.N. slapped the hood of Sullivan's vehicle in apparent anger while trying to regain his balance. Sullivan admitted that he then accelerated and drove his vehicle into G.N. a second time, causing him to fall face first into a 10-foot-deep construction ditch. PSR ¶ 13; ECF No. 67. A construction worker on the scene heard Sullivan say, "go back to China!" as Sullivan slammed his car door shut. Sullivan drove away and was arrested two miles from where he had hit G.N. the second time. PSR ¶ 14.

G.N. suffered bodily injury and pain as a result of Sullivan's bias-motivated conduct. PSR ¶¶ 13-14, 16; ECF No. 67.

## PLEA AGREEMENT AND PRESENTENCE REPORT

The parties stipulated in the plea agreement that the total offense level is 21. Consistent with the plea agreement, the presentence report calculates that the defendant's offense level is 21

and finds that the defendant has a criminal history category of I, resulting in a Guidelines range of 37 to 46 months' imprisonment. PSR p. 24.

The parties stipulated to, and the presentence report includes, *inter alia*, a three-level increase to the base offense level under USSG § 3A1.1(a) because Defendant Sullivan intentionally selected the victim because of his actual or perceived race or color. PSR ¶ 27; ECF No. 67. Nevertheless, "in the case of a plea of guilty . . . the court at sentencing [must] determine[] beyond a reasonable doubt that the defendant intentionally selected any victim . . . as the object of the offense of conviction because of the actual or perceived race [or] color . . . of any person" for the three-level increase to apply. USSG § 3A1.1(a). Here, the facts stipulated in the plea agreement establish beyond a reasonable doubt that Sullivan intentionally selected his victims because of their actual and perceived race and color. *Cf. United States v. Wolfe*, No. 21-4204, 2022 WL 17609467, at *7 (6th Cir. Dec. 13, 2022) (affirming district court's application of § 3A1.1(a) hate-crime enhancement). The relevant stipulated facts include Sullivan yelling to the Asian family, whom he had never met before, to "go back to China," and threatening to kill them, before driving his car into G.N.

## THE GOVERNMENT'S SENTENCING RECOMMENDATION

While the U.S. Sentencing Guidelines ("Guidelines" or "U.S.S.G.") are advisory and not mandatory, *United States v. Booker*, 543 U.S. 220 (2005), the First Circuit has made clear that "the guidelines still play an important role in the sentencing procedure, so that [ ] a court should ordinarily begin by calculating the applicable guideline range." *United States v. Gilman*, 478 F.3d 440, 445 (1st Cir. 2007). As set forth above, Probation and the parties agree that the applicable guideline range is 37-46 months. The Government's recommended sentence of 24 months is below that guideline range.

Section 3553(a) of Title 18 specifies the factors courts are to consider in imposing a sentence and instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with" the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation. 18 U.S.C. § 3553(a). Section 3553(a) then directs a sentencing court to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed" to serve the four overarching aims of sentencing. §§ 3553(a)(1), (2)(A)–(D); *see Gall v. United States*, 552 U.S. 38, 50, n.6 (2007). The Court must also consider the pertinent guidelines and policies adopted by the Sentencing Commission. §§ 3553(a)(4), (5); *see Gall*, 552 U.S. at 50, n.6.

A sentence of 24 months of imprisonment is appropriate because it takes into account the seriousness of the the defendant's offenses; the necessity of just punishment where the defendant victimized people on the basis of their race; and the defendant's age and physical health. In addition, the Court should impose this sentence to deter others with the defendant's criminal inclinations from acting on those inclinations.

### A. The Nature and Circumstances of the Offense and Defendant's Characteristics (18 U.S.C. § 3553(a)(1))

#### 1. *Nature and Circumstances of the Offense*

A custodial sentence is necessary to account for the seriousness of the conduct at issue here. Sullivan hit a man with his car twice, injuring him, because the man was Asian. Racially-motivated offenses like these—magnified by the defendant's threats to kill the family, including the young children, and telling them all to "go back to China!"—devastate not only the immediate recipients of the defendant's threats and physical harm, but also entire families and communities by instilling fear that they too could be targeted because of the color of their skin or

the country of their ancestors. The defendant's sentence must reflect the seriousness of his bias-motivated offense.

### 2. History and Characteristics of the Defendant

The United States is recommending a below-guidelines sentence due to the defendant's age and physical health. If the defendant were not a senior citizen and did not suffer from physical infirmities, the government would be recommending a sentence within the relevant guidelines.

The defendant's criminal history shows that he has some history of harassment and making threats. PSR ¶¶ 49, 50. In addition, separate from the instant incident, two people were frightened enough by the defendant to take out three restraining orders against him (PSR § 77), and his record shows he violated those restraining orders on multiple occasions. PSR §§ 40-41. The defendant's history, coupled with his conduct in the instant offense, shows that the defendant is unable to manage his anger and that his anger quickly turns into threats of violence that are serious enough to make people contact law enforcement authorities for help.

### B. The Need for Sentence Imposed (18 U.S.C. § 3553(a)(2))

### 1. To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment (18 U.S.C. § 3553(a)(2)(A))

This hate crime is a serious offense that merits a sentence commensurate with the harm the defendant caused. The defendant told the Asian victim and his Asian family members, including young children, to "go back to China!" and threatened to kill them. The defendant drove his car into the victim twice because the man was Asian. The defendant willfully caused bodily injury and pain, and he was motivated to do so because of a bias against Asian people. A sentence without incarceration, or with only minimal incarceration, would not convey just

punishment to the victim or to the rest of society. The harm to the victim, his family, and the community merits a custodial sentence of 24 months.

   2. *General Deterrence (18 U.S.C. § 3553(a)(2)(B))*

A sentence less than 24 months of imprisonment would send a message that racially-motivated threats are not deserving of the sanction that Congress and the Sentencing Commission have deemed to be just punishment based on the federal courts' collective sentencing expertise accumulated over the decades. Sullivan's racially motivated acts of hatred and violence in this case are representative of the type of intolerant and racist attitudes that belong to a long-forgotten era. This Court is in the position to send a loud and clear message that racist hate and violence is repulsive, unacceptable in our community, and deserving of punishment.

A 24-month sentence of incarceration is consistent with sentences imposed in other hate crime convictions under Section 249 that involved similar conduct. *See, e.g.*, *United States v. Diggins*, 36 F. 4th 302 (1st Cir. 2022) (defendant received 120-month sentence for attacking two Black men in separate incidents, using racial slurs and striking them both in the head, causing serious injury (this post-trial appeal did not challenge the sentence)); *United States v. Lashley*, No. 23-10471, 2023 WL 8253883 (11th Cir. Nov. 29, 2023) (affirming a 36-month sentence of imprisonment for a defendant for repeatedly calling a victim racial slurs and repeatedly striking him with closed fists, causing injuries); *United States v. Beckham*, Case No. 18-cr-00075 (M.D. Tenn. 2021) (sentencing a defendant to approximately 36 months for telling two young Muslim girls wearing hijabs "Allau Akbar!" and "Go back to your country!" and then attacking the girls'

father by swinging a knife and punching at him);[1] *United States v. Mouat*, Case No. 21-cr-20102 (E.D. Mich. 2021) (defendant sentenced to 60 months for using racial slurs against a group of Black teenagers and telling them that Black people had no right to use a beach where the incident occurred, and then striking one of the teens in the face with a bike lock causing serious injury).[2]

### 3. Specific Deterrence (18 U.S.C. § 3553(a)(2)(C))

Given the seriousness of the offense, its unprovoked and disproportionate nature, the fact that it involved minor children, and the defendant's history of harassing and threatening behavior, a custodial sentence is necessary to protect the public and to deter Sullivan from future unlawful bias-motivated conduct.

### C. Restitution

For the reasons set forth in the Government's Supplemental Sentencing Memorandum Regarding Restitution (filed under seal), the Government requests that the Court order restitution in the amount of $144,059.00.

### D. Victims' Right to Address the Court at Sentencing

The government hereby notifies the Court that the victim and one of his family members who was present when the crime was committed may choose to exercise their right to address the Court prior to the imposition of sentence. *See* 18 U.S.C. § 3771(a)(4). The victim and his family member are considering drafting victim impact statements to the Court; the government will submit these statements to probation, the Court, and defense counsel if and when received. *See* 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background,

---

[1] The District Court sentenced Beckham to time served. The sentence appears to be approximately 36 months, based on an order detaining the defendant pre-trial entered on October 15, 2018 (attached as Exhibit A) and the Court's sentencing judgment entered on October 8, 2021 (attached as Exhibit B).

[2] The Judgment of the Court and Justice Department Press Release regarding the *Mouat* sentencing are attached as Exhibits C and D, respectively.

character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."). The Court "may take into account 'any information that has sufficient indicia of reliability.'" *United States v. Diaz-Rivera*, 957 F.3d 20, 27 (1st Cir. 2020) (cleaned up). "In so doing, it has 'wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing.'" *Diaz-Rivera*, 957 F.3d at 27 (cleaned up).

### E. Conditions of Supervised Release

As set forth above, the government recommends that the Court order all the standard conditions of supervised release pursuant to USSG §§ 5D1.3(c) and 5B1.3(c) as well as the conditions recommended by Probation in the PSR at pages 27-28. The government specifically highlights its recommendation that the Court order the defendant to participate in educational classes or community service directly related to the community harmed by his offense, the Asian American and Pacific Islander (AAPI) Community. This recommendation was echoed by Probation in the PSR. PSR p. 27. The Probation Officer further noted that this condition serves the specific statutory sentencing purpose of "aid[ing] the defendant and bring[ing] about improvements to his or her conduct and condition." *Id*. at 27.

In enacting the Shepard-Byrd Hate Crimes Prevention Act, 18 U.S.C. § 249, Congress explicitly included a suggestion that the Court may order a convicted defendant to engage in educational classes or community service related to the community impacted by his crime (*id*. at § 249(e)), showing the importance Congress placed on efforts to rehabilitate people who commit hate crimes and stop them from committing future hate crimes. The government strongly

encourages this Court to implement Congress' suggestion to order the defendant to participate in classes or community service upon release.

## CONCLUSION

For the reasons set forth herein, the United States respectfully requests the Court impose a sentence of 24 months' imprisonment followed by a three-year term of supervised release, restitution of $144,059.00, a fine within the guidelines sentencing range if the Court finds the defendant able to pay, and a mandatory special assessment of $100.

Respectfully submitted this 28th day of August 2024,

JOSHUA S. LEVY
Acting United States Attorney

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant U.S. Attorney
Tara Allison
Trial Attorney, Civil Rights Division

CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2024 this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Torey B. Cummings*
Torey B. Cummings
Assistant U.S. Attorney