## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
UNITED STATES OF AMERICA          )
                                  )
v.                                )        CRIMINAL NO. 1:23-cr-10039- DJC
                                  )
JOHN SULLIVAN,                    )
        Defendant                 )
_____)


*There are bad people who do bad things and good people that do a bad thing.  As articulated below, Jack Sullivan is a good person who did a bad thing.  Consideration of his life as a whole, his dedication to his family and his penchant for charitable acts should be considered in adopting his recommendation for sentence in this case.*


### DEFENDANT'S SENTENCING MEMORANDUM

Now comes the Defendant, *John Sullivan ("Jack")*, and respectfully submits this sentencing memorandum in support of a sentence of 6-months of home confinement, followed by 3 years of supervised release, no fine, based on Jack's inability to pay and the restitution request to be determined by the court.  Further, the Defendant requests this Honorable Court impose an attendance requirement where the Defendant can learn and understand the importance of cultural differences.

### Procedural History

On December 2, 2022, Jack was charged with a variety of offense in the Quincy District Court (dockets 2256CR4768, 2256CR4818).  On March 22, 2023, the Commonwealth filed a Nolle Prosequi and these charges.  On March 1, 2023, Jack made his initial appearance and was arraigned on this docket.   The indictment charged

him with the Hate Crimes Acts in violation of 18 U.S.C. § 249(a)(1).  Jack was released

on conditions of release.  On April 3, 2024, Jack changed his plea to guilty.

### Defendant's Sentencing Argument

"District Courts must determine in each case what constitutes a sentence that is

'sufficient, but not greater than necessary, to achieve the overarching sentencing

purposes of 'retribution, deterrence, incapacitation and rehabilitation.'" *Rosales-Mireles*

*v. United States*, 138 S. Ct. 1897, 1903 (2018), citing *Tapia v. United States*, 131 S. Ct.

2382 (2011).  "…[a] district court should begin all sentencing proceedings by correctly

calculating the applicable Guidelines range."  *Gall v. United States*, 128 S. Ct. 586, 596

(2007).  "As a matter of administration and to secure nationwide consistency, the

Guidelines should be the starting point and the initial benchmark."  *Id*.  After both parties

are given an opportunity to argue for a sentence the party deems appropriate, the Court

should then consider all factors set out in 18 U.S.C. § 3553 (a).  *Id*. at 596.  The court

may not presume the Guidelines range is reasonable.  The court "must make an

individualized assessment based on the facts presented."  *Id*. at 597.

### John Sullivan's Background

Jack Sullivan was born to a large, diverse family.  He is the 5th of 15 brothers and

sisters.  His siblings consisted of 4 separate sets of twins. **Exhibit Two**.  Being part of a

large family, Jack was responsible for helping to raise his siblings. **PSR, ¶ 54**.  Jack

was a hard worker from a young age.  He worked shining shoes, shoveling snow and

collecting metal to obtain money at a young age.

Jack is the father of 3 children of his own, a son Jason and two daughters, Melissa and Andrea. Jack's life is best characterized by dedication to his family and friends, kindness and a pattern of charity.

Jack is a supportive father. His daughter Andrea notes, "he attended birthdays, graduations, sports I played and other events that were important to me." **Exhibit One, ¶ 3**. Jack's son Jason notes his father has helped him a great deal since buying his home in 2004. **Exhibit Four, ¶ 8**. Jack's friend, John Mulcahy notes Jack has spent countless hours working on home improvements at his son's house. **Exhibit Five**. Jack has deep affection for his only grandchild who is beginning college this fall at Westfield State University. Jack's family dedication has continued to extended family members after his divorce in 1996. Mary Johnston, Jack's ex-wife's sister notes his support for her and her brother when her father suddenly dies when she was 12 years old. Jack provided support for her and her brother while the grieved her father's death. **Exhibit Six**. Jack also remained close with his mother when she grew old and sickly. **Exhibit Eight**. It is clear from the letters of support that Jack has been and remains a loving supportive father and supportive figure to those close to his family.

Jack's life is also characterized by his charitable contributions. As a long-term member of the Quincy Lodge of Elks 943, Jack has demonstrated a life of charity. Jack had been participating in the delivery of turkeys through the Elks on Thanksgiving for a number of years. **See Exhibit One, Exhibit Five**. Jack has also been known to help others, "helping walk an elderly woman safely to a car that would be waiting for her" when leaving the Elks. **Exhibit Five**. Additionally, Jack's acts of kindness were exhibited when his daughter was walking her dog and observed Jack helping a stranger

3

change a flat tire on his car.  **Exhibit One**.  These acts are not done seeking approval

or gratitude.  They are selfless.  The types of acts that are done not to seek approval or

to "show off" for anyone.  They are a representation of who Jack is as a person.

Acknowledgements from friends and family, those who know him best.

Jack also suffers from many serious health problems.  In 1985, Jack suffered a

back injury while working.  Disc and nerve issues have persisted over the course of his

lifetime.  These issues have caused pain and difficulty sleeping.  Over the course of his

life, he has endured 15 different surgeries, including 6 surgeries since 2014.  His

problems and the resulting symptomologies are described in the Presentence Report in

¶'s 82-85.

Of note, Jack was diagnosed with colon cancer in 2016.  Jack underwent surgery

for the cancer and has been in remission since the surgery.

As recently as August 29, 2024, Jack was diagnosed with Wet Macular

Degeneration.  This disease is characterized by a buildup oof eye fluid that can cause

blood vessels in the eye to burst and cause blindness.  Treatment involves a series of

Anti-VEGF injections to prevent a loss of vision.  The course of treatment has not yet

been determined but is anticipated the injections will be part of a course of treatment.[1]

## Applicable Sentencing Guidelines

In this case, Jack has pled Guilty to the indictment charging him with a violation

of 18 U.S.C. § 249(a)(1).  This charge has a base level offense of 14.  U.S.S.G.

§2A2.2(a).  The charge involved the use of a vehicle as a dangerous weapon.  This

---

[1] Counsel learned of this additional health issue on August 29, 2024 and is seeking to
secure the records.

results in a four-level increase.  U.S.S.G. § 2A2.2(b)(2)(B).  A three-level enhancement

would applies based on a determination the victim was targeted due to his actual and

perceived race and national origin.  U.S.S.G. § 3A1.1(a).  The adjusted base level

offense is 24.

Jack has clearly accepted responsibility for his offense, thereby decreasing his

base level offense by 2 for a total base level offense of 20.  U.S.S.G. §3E1.1(a)

Jack timely notified the Government of his intention to enter a Guilty plea on the

above referenced charge thereby allowing the Government to avoid preparing for trial

resulting in a 1-level decrease in his base level offense for a total base level offense of

19.  U.S.S.G. § 3E1.1(b).

**The total offense level is 21**.

Criminal History

Jack does not score any criminal history points.  This results in a Category I

criminal history.

Guideline Range

Based on a base level offense of 21 and a criminal history category I, Jack's

Guideline range is 37-46 months.  Pursuant to the plea agreement in this case, the

Government has agreed to request a sentence no greater than 24 months.

Variance from U.S.S.G

Mr. Sullivan asks the court to impose a variance from the U.S.S.G. as it relates to

his indictment.  Mr. Sullivan requests this Honorable court impose a sentence of 6

months Home Confinement, followed by a 3-year period of supervised release, along

with a requirement to enroll in/participate in and complete a program addressing

developing sensitivity toward different cultures.  This sentence is 'sufficient but not greater than necessary' to accomplish the goals of sentencing and is a just sentence for this case.

"Variances do differ from departures.  There may well be cases that would not justify a departure under the Guidelines, but which are appropriate for a variance. Factors ordinarily considered irrelevant in calculating the advisory guideline range, or in determining whether a guideline departure is warranted, can be relevant in deciding whether to grant a variance."  *United States v. Chase*, 560 F. 3d 828, 830 (1ˢᵗ Cir., 2009).  "In fashioning a 'sentence sufficient, but not greater than necessary' {citation omitted}, district courts are not only permitted, but required to, consider the history and characteristics of the defendant."  *Id*.  "…factors such as a defendant's age, medical condition, prior military service, family obligations, entrepreneurial spirit etc. can be the basis for a variance."  *Id*.  "In addition, factors that have already been taken into account in calculating the advisory guideline range, such as a defendant's lack of criminal history, can nevertheless form the basis of a variance."  *Id*.

Considering Jack's background, the facts and circumstances of this case, his criminal history score categorizing him as a criminal history, Category I, his substantial health problems and his advanced age make this case eligible and appropriate for the variance requested by Mr. Sullivan.

Sentencing Factors under 18 U.S.C. § 3553(a)

The Court, in determining the particular sentence to be imposed, shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  "The commission has not developed any

6

standards or recommendations that affect sentencing ranges for many individual

characteristics, matters such as age, education, mental or emotional condition, medical

condition (including drug or alcohol addiction), employment history, lack of guidance as

a youth, family ties, or military, civic, charitable or public service are generally not

considered under the Guidelines.  See U.S.S.G. Manual, §§ 5111.1-6, 11 and 12

(November 2006).  These are however, matters that § 3553(a) authorizes the

sentencing judge to consider."  *Rita v. United States*, 127 S. Ct. 2456, 2473 (2007)

(Stevens J. and Ginsburg J., concurring).

Nature and Circumstances of Crime

      Mr. Sullivan takes full responsibility for his conduct in this case.   He is

embarrassed by his conduct and wears the shame associated with his conduct.  Mr.

Sullivan recognizes there is no place in this world for any type of hate-based conduct,

especially when the conduct occurs based on a person's perceived ethnicity.  Though

his conduct on the date of this offense based on the race and national origin of the

victim, there is nothing in his background suggesting this is a pattern of conduct.

Instead, a fair read of his conduct is that it was an isolated incident, aberrant behavior.

Personal History and Characteristics of Defendant

      Mr. Sullivan incorporates by reference the portion of his background listed above

in this sentencing memorandum.

The Need for the Sentence Imposed

      Under 18 U.S.C. § 3553(a)(2), the Court must consider the following factors

when imposing sentence:

      The sentence must reflect the seriousness of the offense, and should promote
      respect for the law, and to provide a just punishment for the offense.  The

sentence must also afford adequate deterrence to criminal conduct and should protect the public from further crimes of the defendant and must also consider whether the sentence will address any needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Seriousness of Offense, Respect for Law, Just Punishment

After pleading Guilty, Mr. Sullivan is a convicted felon.  For the first 78 years of his life, he avoided felonious conduct.  At his age, a felony conviction may not cause the same problems that it would if he were younger, i.e. challenges to obtain employment, housing etc.  The felony conviction, does however, brand him with the shame of having a felony conviction.  A sentence of 6-months of home confinement is 'sufficient, but not greater than necessary' to recognize the seriousness of the offense. Further, a sentence of 6 months home confinement will serve to punish Mr. Sullivan for his conduct.  Given his advanced age and his medical issues, the sentence promotes respect for the law and is a just punishment for the crimes committed in this case.

Mr. Sullivan also asks the court to consider the sentence in relation to his situation.  A day for day sentence for a man of advanced age and medical problems is arguably different for a person of a younger age without the medical issues.  Mr. Sullivan's advanced age and medical issues are not excuses for the sentence he requests, but factors for consideration when the court imposes sentence.  Consideration of these factors is important to impose a just punishment.  6 months of home confinement is 'sufficient but not greater than necessary' in this case.

Deterrence

A sentence of 6 months home confinement as a substantial deterrent toward future criminal conduct.  As a specific deterrent, this sentence will curtail Mr. Sullivan's

freedom for a period of 6 months.  With the knowledge that he will be under court supervision of an additional 3 years after his home confinement, he will be supervised until the age of 82.  Mr. Sullivan is concerned about dying in prison.  Should he violate the terms and conditions of his supervised release, he recognizes the court would have the power to incarcerate at least up until the age of 82.  This sentence will drive compliance and serve as a strong deterrent toward not reoffending.  Lastly, at the outset of this case, Mr. Sullivan spent 6 days in state custody.  Those 6 days in custody were a sobering experience for him and had a lasting impact of Mr. Sullivan.  These 6 days in custody provide a strong deterrent effect.

Protection of the Public

A sentence of 6 months of home confinement will protect the public. As referenced above, Mr. Sullivan has learned a difficult lesson from his conduct in this case and proceeding through the process of this court proceeding.  As referenced in his background, Mr. Sullivan has lived a life of good deeds, charitable works, and kindness. Every indication is that the conduct in this case was an aberration, not a pattern of conduct.  The proposed sentence ensures the protection of the public and is 'sufficient, but not greater than necessary.'

Correctional Treatment

A sentence of incarceration is not necessary to provide treatment.  Mr. Sullivan suggests the court impose a program to educate him and train him on sensitivity to cultural differences.  This form of treatment can be found beginning with his home confinement.  A period of incarceration is not necessary to satisfy the goal of

correctional treatment.  Considering Mr. Sullivan's age, and medical problems, a period of incarceration for the purpose of correctional treatment is arguable counterproductive.

The Kinds of Sentences Available

The proposed sentence of 6 months of home confinement followed by a period of 3 years of supervised release is an available sentence for the court to consider.

The Need to Avoid Unwarranted Sentence Disparities

The proposed sentence does not create an "unwarranted" sentence disparity. Mr. Sullivan's request for a variance is based on the sentencing factors outlined in 18 U.S.C. § 3553(a)(1).  With a focus on the word "unwarranted," Mr. Sullivan acknowledges the average length of sentence for a conviction whose primary guideline is §2H1.1 and a criminal history Category I is 30 months.  However, the factors discussed above, his advanced age and his medical problems, do warrant a variance. These factors are real and are justified.  The proposed sentence of 6 months of home confinement does not create an "unwarranted" sentencing disparity, but instead is justified and provides support for a sentence that is 'sufficient but not greater than necessary' to accomplish the goals of sentencing.

## Conclusion

There are bad people who do bad things and good people that do a bad thing. Jack Sullivan is a good person who made a bad decision on the date of this offense. Jack will suffer the consequences of his poor decision.  His background suggests his behavior in this case was an aberration and not the norm for him.  The sentence requested is 'sufficient, but not greater than necessary.'

10

WHEREFORE, Jack Sullivan respectfully requests this Honorable Court adopt his recommendation for a sentence of 6-months of home confinement, three years of Supervised Release, No fine, based on his inability to pay, and restitution the court deems appropriate.

DATE:  August 30, 2024

Respectfully Submitted
John Sullivan
By his attorney,

/s/ Jeffrey Miller
Jeffrey Miller, Esq.
60 Leo Birmingham Pkwy., Ste. 103
Boston, MA 02135
BBO # 670561
(617) 482-5799
jmiller@millercriminaldefense.com

**CERTIFICATE OF SERVICE**

I, Jeffrey Miller, hereby certify that this document, filed through the ECF System on August 30, 2024, will be electronically sent to the registered participants as identified on the Notice of Electronic Filing (NEF), and that papers will be sent to all non-registered participants who have appeared in this case.

/s/ Jeffrey Miller