UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 23-cr-10039-DJC |
| ) | |
| JOHN SULLIVAN, ) | REDACTED FOR PUBLIC FILING |
| DEFENDANT. ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America respectfully opposes Defendant John Sullivan's Motion for Compassionate Release. Sullivan committed a racially motivated hate crime, inflicted grave harm on his victim, and intimidated and frightened the victim's family. When sentencing Sullivan five months ago, this Court appropriately weighed the gravity of the offense and need for just punishment against Sullivan's age and medical conditions, ultimately arriving at a sentence of 18 months—less than 50% of the guidelines range for Sullivan's crime.

Sullivan should not be granted compassionate release, for at least three reasons. First, Sullivan's advanced age and medical conditions simply do not constitute an "extraordinary and compelling" basis to reduce Sullivan's sentence, as required under 18 U.S.C. § 3582(c)(1)(A). Second, as demonstrated by the instant offense, Sullivan is a danger to the community, precluding his release. Third, sentencing factors identified in 18 U.S.C. § 3553(a) weigh heavily against Sullivan's early release. The Court should deny Sullivan's motion.

### DEFENDANT'S CRIMINAL OFFENSE

Prior to December 2, 2022, Sullivan had never met the victim in this case ("G.N."), who was born in Vietnam and is a naturalized United States citizen. On December 2, 2022, G.N.

1

went to the Post Office with members of his family, including three minor children. Pre-Sentence Investigation Report ("PSR") ¶ 9. While G.N. was inside the Post Office with the three minors, Sullivan first encountered G.N.'s brother-in-law outside of the Post Office. *Id.* ¶ 10. Sullivan verbally assaulted G.N.'s brother-in-law—hurling racialized threats and abuse at him ("Go back to China!"). *Id.*

When G.N. emerged from the Post Office with his sister and three minor children, Sullivan directed his verbal abuse towards them as well and threatened to kill G.N. and his family members—including two minor children ("I'm going to kill you."). *Id.* ¶ 11.

When G.N. stood in front of Sullivan's vehicle—apparently to protect G.N.'s sister—Sullivan drove into G.N., hitting him and forcing him onto the hood of Sullivan's car. *Id.* ¶ 12. Sullivan drove for 200 feet with G.N. screaming for help on his hood and then Sullivan abruptly braked causing G.N. to tumble from the car's hood. *Id.* ¶ 13. Attempting to regain his balance, G.N. slapped his hand on the hood of Sullivan's car, at which point Sullivan accelerated and drove his car into G.N. a second time, causing him to fall face first into a construction ditch and inflicting bodily injury and pain on G.N. *Id.* A construction worker on the scene heard Sullivan again tell G.N. to "go back to China!" before driving away. *Id.* ¶ 14.

On April 3, 2024, Sullivan pleaded guilty to a hate crime under 18 U.S.C. §249(a)(1) for using his vehicle to cause injury to G.N., whom he assaulted based on his perceived race and national origin.[1]

---

[1] The victim, G.N., has indicated to the Government that he opposes Sullivan's request for early release.

## THE SENTENCE IMPOSED BY THIS COURT

Consistent with the plea agreement and the PSR, the Court calculated Sullivan's Total Offense Level to be 21 and his guidelines sentencing range to be 37 to 46 months. The Government recommended a sentence of 24 months—a significant downward variance from the guidelines range. Sullivan recommended a sentence of 6 months of home confinement.

The Court imposed a sentence of 18 months, just under 50% of the guidelines range. In addition to the guidelines range, the factors that the Court specifically identified as the basis for the Court's sentence included:

    (i)    the crime of conviction, which the Court described as "a hate crime" and a "serious crime that "warrants a serious sentence";

    (ii)    Sullivan's personal history—including his age and family circumstances;

    (iii)    ;

    (iv)    ███████████████████████████████████████████; and

    (v)    JSIN data showing that *all* defendants who face the same base offense level as Sullivan and have the same Criminal History Category receive a sentence of incarceration and that the average and median sentences for such defendants were 30 and 34 months, respectively.

*See* Sentencing Transcript, Sept. 4, 2024. The Court balanced these factors by imposing a significant—18 month—sentence of incarceration, but one well below the average sentence imposed on similarly situated defendants.

## THE LEGAL STANDARD FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)

The general rule is that a federal district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The compassionate release statute, 18 U.S.C.

§ 3852(c)(1)(A), provides a narrow exception and sets out the three hurdles a defendant must clear to succeed on a motion for compassionate release:

> (1) there are 'extraordinary and compelling reasons' that warrant a sentence reduction; (2) 'such a reduction is consistent with applicable policy statements issued by the Sentencing Commission'; and (3) 'after considering the factors set forth in [§] 3553(a) to the extent that they are applicable, the court finds, in its discretion, that the particular circumstances of the case justify reducing the defendant's sentence.

*United States v. D'Angelo*, 110 F.4th 42 (1st Cir. 2024) (quoting 18 U.S.C. § 3852(c)(1)(A)). "A district court may grant a compassionate release motion only if it finds that the movant satisfies each step." *Id.* (citing *United States v. Ruvalcaba*, 26 F.4th 14, 18-19 (1st Cir. 2022); *United States v. Saccoccia*, 10 F.4th 1, 4 (1st Cir. 2021). "And it must deny the motion if that movant fails at any step." *Id.* (citing *United States v. Texeira-Nieves*, 23 F.4th 48, 52 (1st Cir. 2022); *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022)). "In exercising discretion under § 3553(a) and the First Step Act, most courts treat compassionate release due to medical conditions as … a rare event." *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) (collecting cases).

Prior to November 2023, the relevant policy statement, U.S.S.G. § 1B1.13, did not apply to prisoner-initiated motions for compassionate release. *See Ruvalcaba*, 26 F.4th at 23 ("The short of it is that the Sentencing Commission's current policy statement is not applicable to prisoner-initiated motions for compassionate release, and the Commission has not yet issued a policy statement applicable to such motions.").

Effective November 1, 2023, the Sentencing Commission adopted an amendment making its policy statement applicable to motions for compassionate release "of the Director of the Bureau of Prisons *or the defendant pursuant to 18 U.S.C. § 3582(c)(1)(A)*." U.S.S.G. 1B1.13 (as

4

Amended Nov. 1 2023; emphasis added). The Sentencing Commissions' relevant policy statement now provides (in pertinent part) that:

> Upon motion of the defendant … the court may reduce a term of imprisonment … if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—extraordinary and compelling reasons warrant the reduction; … the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and the reduction is consistent with this policy statement.

USSG § 1B1.13(a). The policy statement also provides (again, in pertinent part) that:

> Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof
> …
> The defendant is (i) suffering from a serious physical or medical condition, (ii) suffering from a serious functional or cognitive impairment, or (iii) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* § 1B1.13(b)(1)(B). Finally:

> [A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

*Id.* § 1B1.13(e).

## ARGUMENT

Sullivan fails at each step of the required analysis. First, Sullivan's medical conditions fail to rise to the threshold of "extraordinary and compelling circumstances." To the contrary, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and the Bureau of Prisons ("BOP") is equipped to address such concerns. Second, Sullivan's commission of a violent hate crime demonstrates that he is a

5

danger to the community. Third, the sentencing factors under 18 U.S.C. §3553(a)—and particularly the seriousness of this hate-based assault—weigh against his release.

***Sullivan Fails to Present "Extraordinary and Compelling" Reasons for His Release***

The Court remanded Sullivan to the custody of the U.S. Marshals on September 4, 2024, pursuant to 18 U.S.C. § 3143(b)(2) because Sullivan's offense was a crime of violence involving the use of a dangerous weapon and because the Court did not find extraordinary circumstances that would overcome the statutory presumption in favor of remand.

Since September 4, 2024, Sullivan has been incarcerated at the Wyatt Detention facility. He was designated for transfer to a BOP facility, FCI Allenwood, in Pennsylvania, on Friday January 3, 2025, but that transfer was stayed, at Sullivan's request, pending resolution of his request for compassionate release. Dkt. No. 118.

While incarcerated at Wyatt, Sullivan ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *See* Dkt. Nos. 115.1 – 115.5.

Sullivan argues that these ████████████████████████████████████ warrant his release. Without diminishing the severity of Sullivan's medical conditions, they simply do not rise to the level of "extraordinary and compelling" circumstances. The BOP houses inmates with a range of often significant medical conditions. As part of the BOP intake process, inmates are assigned a care level of one through four based upon their medical condition and needs—and, based on their required care level, are designated to a BOP facility with adequate resources and

services to meet that need. *See* https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf (last accessed Jan. 7, 2025). Sullivan is presently designated to FCI Allenwood, a Care Level Three facility. Care Level Three institutions are equipped to house inmates with "more complex medical conditions," who are "more fragile," and who "may require frequent clinical contacts with Health Services employees and more visits to community medical specialists. They may also periodically require hospitalization to stabilize their conditions." *See* https://www.bop.gov/policy/progstat/6031.05.pdf (last accessed Jan. 7, 2025). They may also "require assistance with some activities of daily living (ADLs) that can be accomplished by inmate companions." https://www.bop.gov/resources/pdfs/care_level_classification_guide.pdf.

Conditions identified by the BOP warranting designation to a Care Level Three facility



If health care needs of a BOP inmate change after an initial designation, redesignation is possible. Care Level Four facilities—for example FMC Devens—can provide even more complex medical services and intensive care—including care for inmates who "require[] 24-hour skilled nursing care or nursing assistance." *Id.* at 3.[2]

---

[2] The Government will cooperate with Defendant's counsel to ensure that up-to-date medical records and information are provided to the BOP's Designation and Sentence Computation

Sullivan's medical conditions and medical needs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—including both FCI Allenwood (the facility to which Sullivan has been designated) and other BOP facilities which have resources to address even more complex medical needs.  As other courts have explained, the compassionate release guidelines are narrow and "refer[] to medical conditions that, by their nature, cannot be treated effectively in prisons. It does not encompass medical conditions that are treatable in prison, even when treatment appears to be inadequate." *United States v. Miller*, 2021 WL 2711728, at *3 (N.D. Cal. July 1, 2021).  *See also United States v. Polnitz*, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020) (only extraordinary medical conditions warrant release; "Many inmates suffer from pain and mental illness.").

Sullivan's medical conditions ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ so do not constitute "extraordinary or compelling circumstances." Accordingly, Sullivan's motion for release fails at the threshold.

***The Defendant is a Danger to the Community***

The United States Sentencing Commission's applicable policy statement permits compassionate release only if "the court determines that … the defendant is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(a)(2).

The instant conduct makes clear that Sullivan is and remains a danger to the community, precluding his release.  Sullivan verbally assaulted multiple individuals.  He harassed them based on their perceived race and national origin.  He pointed to G.N. and multiple members of his

---

Center to ensure that Sullivan is designated (or re-designated as necessary) to a facility with services and resources commensurate with his medical needs.

family, including two minor children, and told each individually and in turn: "I'm going to kill you!" PSR ¶ 11. And he followed up on his threats with violence, driving into G.N., driving with G.N. clinging to the hood of Sullivan's car, braking suddenly, and then crashing again into G.N. before driving off.

Moreover, this case is not an isolated act of violence. Instead, it is consistent with a history of harassment and threats. Sullivan has been the subject of three restraining orders obtained by two different individuals, PSR ¶ 77, and he violated those restraining orders on multiple occasions. PSR ¶¶ 40-41. In short, Sullivan remains a danger to the community making his release inconsistent with the applicable policy statements issued by the Sentencing Commission, and so precluding his early release.

***The Sentencing Factors Under 18 U.S.C. § 3553(a) Weigh Against Sullivan's Release***

The Government addressed the Section 3553(a) factors at length in its Sentencing Memorandum—and so will not belabor them here. *See* Dkt. No. 75.

At sentencing, the Court imposed a significant sentence upon Sullivan. That sentence appropriately recognized that Sullivan's hate crime is a serious offense, and that substantial incarceration is required to promote respect for the law and provide just punishment for Sullivan's heinous race-based attack. 18 U.S.C. § 3553(a)(1)-(2). The sentence also provided specific and general deterrence and protected the public by sending the messages that racist hate and violence is repulsive, unacceptable in our community, and deserving of punishment. 18 U.S.C. § 3553(a)(2)(B)-(C). Finally, by imposing a sentence of incarceration—but one below the average sentence imposed on similarly-situated offenders—the Court appropriately balanced the need to avoid unwanted sentencing disparities with a reflection of Sullivan's personal history and characteristics, in particular Sullivan's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .

In short, the 18-month sentence that this Court imposed appropriately weighed and balanced the relevant considerations under Section 3553(a). Granting early release would undo this careful balance.

## CONCLUSION

For the reasons set forth above, Defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA,

By its attorney,

JOSHUA S. LEVY
United States Attorney

Dated: January 10, 2025

*/s/ Christopher Looney*
Christopher Looney
Assistant United States Attorney

## CERTIFICATE OF SERVICE

Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and will be emailed to counsel for Defendant John Sullivan.

*/s/ Christopher Looney*
Christopher Looney
Assistant United States Attorney

Dated: January 10, 2025